**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: April 3 2015

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **In Re:** | ) | **Case No. 14-33734** |
| | ) | |
| Tiffany Michelle Gardner, | ) | **Chapter 7** |
| | ) | |
| **Debtor.** | ) | |
| | ) | **JUDGE JOHN P. GUSTAFSON** |

### MEMORANDUM OPINION AND ORDER ON
### MOTION OBJECTING TO EXEMPTIONS

This case comes before the court on the Chapter 7 Trustee's Motion Objecting to Exemptions Pursuant to Bankruptcy Rule 4003(b) [Doc. #11], Debtor's Response to Trustee's Objection to Exemptions on Debtor's 2014 Refunds [Doc. #21], and the Brief in Support of Objection to Exemptions [Doc. #24] filed by the Trustee.

The issue, as framed by the Debtor, is: "which bank 'balance', the 'account balance' or the 'available balance' should be used to analyze a debtor's estate when calculating assets and exemptions on the date of a Chapter 7 filing. Specifically, whether or not transactions that occurred at a merchant, online, and/or at an ATM over the weekend (during non-banking business hours) should be classified as 'transactions' that reduced the value of the bank balance for purposes of calculating the bankruptcy estate at the moment of filing." [Doc. #21, p. 2].

The facts in this case do not appear to be in dispute[1]. [Doc. #24 p. 1]. Debtor filed her Chapter 7 at 12:02 p.m. on Monday, October 13, 2014. [Docs. #1, p. 2 & #21, p. 2]. In preparation for her bankruptcy filing, the Debtor was asked to print out balances on her account at an ATM machine for purposes of calculating assets and exemptions. [Doc. #21, p. 2]. The receipt the Debtor obtained reflected that her checking account had an "Acct Bal" (hereinafter "Account Balance") of $949.76, and an "Avl Bal" (hereinafter "Available Balance") in the amount of $144.69. [*Id*.]. The difference of $805.07 between the Account Balance and the Available Balance were monies that the Debtor had used for:

- Three separate purchases totaling $220.21.
- A $245.55 payment to Time Warner.
- A $340 cash withdrawal[2].

The issue before the court is whether it is the amount of the "Account Balance" or the "Available Balance" that would be recoverable by the Chapter 7 Trustee through a turnover action brought against the Debtor under 11 U.S.C. §542(a). If such an action against the Debtor could be maintained for the full "Account Balance" - the full amount in the Debtor's bank account at the time of filing - that would reduce the unused exemption amount available to protect Debtor's tax refunds.

Debtor cites to certain account related documents that Fifth Third Bank makes available at its "online help desk". [Doc. #21, p. 3]. These documents state that an Account Balance is: "The balance as of the previous business day reflects all funds in your account, including deposits, withdrawals and other transactions that were posted to your account through the previous business day." [*Id*., & Ex. A].

In contrast, the Available Balance is described in Fifth Third's online document as: "The available balance reflects funds in your account available for immediate use. Your available balance is your balance as of the previous business day's processing, plus or minus any pending transactions, direct deposits that have not posted, or Bank holds (i.e. Deposited funds being held for verification)." [*Id*. & Ex. A]."

At the hearing on this matter, the court suggested that the parties might wish to use, at least as a research tool, the Supreme Court's decision in *Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), a preferential transfer case which held that a "transfer" of property is only made with respect to a negotiable instrument when it is finally honored by the drawee financial institution.

---

[1]/ "The Trustee stipulates to the facts that the debtor provided in her brief that she had $949.76 as an account balance on the date of her bankruptcy filing at Fifth Third Bank and an available balance of $149.69, while purchases and debit payments were pending that had not cleared until end of business either that day or the day after. The Trustee has no reason to dispute the charges, or payments or cash withdraw as listed by debtor." [Doc. #24, p. 1].

[2]/ It appears to the court that these numbers are off by 69 cents. But, this *de minimis* difference is not material.

2

**LAW**

The District Court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. §1334(a) as a case under Title 11. This matter has been referred to this court by the District Court under its general order of reference. 28 U.S.C. §157(a); General Order 2012–7 of the United States District Court for the Northern District of Ohio. A proceeding regarding exemptions from property of the estate is a core proceeding that the court may hear and decide. 28 U.S.C. §157(b)(1), (b)(2)(B) & (E).

A decision on the objection to exemption starts with an issue on which there is a split of authority, and then enters into a relatively new area of commercial activity where there appears to be very little bankruptcy case law that is directly on point.

**I.  CHAPTER 7 TRUSTEE'S ABILITY TO USE §542(a) TO RECOVER THE VALUE OF PROPERTY NO LONGER IN THE DEBTOR'S POSSESSION.**

There is no dispute that shortly after filing, the bank debited the Debtor's account for the difference between "Account Balance" and the "Available Balance".[3] At the time the Objection to Exemption was filed by the Chapter 7 Trustee, the Debtor was no longer in possession of the funds that would be the subject of a "turnover" action under Section 542(a). The courts are split as to whether a debtor must remain in possession of the property at the time the motion for turnover is filed, or whether possession of the property at the time the underlying bankruptcy case was filed is sufficient. *Compare*, *In re Pyatt*, 486 F.3d 423 (8th Cir. 2007)(no turnover action permitted when debtor had lost control of fund removed from account when prepetition checks were honored postpetition) *with*, *Shapiro v. Henson*, 739 F.3d 1198 (9th Cir. 2014)(trustee's turnover power was not restricted to property of estate at time that turnover motion was filed); *Beaman v. Vandeventer Black, LLP ( In re Shearin )*, 224 F.3d 353, 356 (4th Cir. 2000)(control of property of the estate immediately after the bankruptcy case itself was filed was sufficient for trustee's motion to compel turnover); *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA Diversified Prods., Inc.)*, 100 F.3d 53, 56 (7th Cir. 1996)(§542(a) provides for turnover "of the value" of property no longer in possession of the defendant).

The Sixth Circuit Bankruptcy Appellate Panel has rejected *Pyatt*, and followed the line of cases permitting a Chapter 7 trustee to use §542(a) to seek recovery of property that was property of the estate at the time of filing. *In re Bailey*, 380 B.R. 486 (6th Cir. BAP 2008)(refusing to reduce amount of non-exempt tax refund required to be turned over to the trustee by amount debtors had paid to their attorney prior to the filing of the turnover action). The holdings in *Bailey* and *Shapiro v. Henson* are correct, and will be

---

[3]/ The parties have not raised any issue related to the automatic stay in this matter.

3

followed in this decision. A Chapter 7 trustee may maintain a turnover action[4] even where the Debtor no longer is in possession of the property that is the subject of the action.

## II. THE "FLOATING CHECK" CASES.

The majority of decisions that have addressed whether a Chapter 7 trustee can use a turnover action to recover the full amount in a debtor's checking account at the time of filing have held that a Chapter 7 trustee is entitled to recover the full balance, without reduction due to prepetition checks that were honored postpetition. *See*, *Shapiro v. Henson,* 739 F.3d 1198 (9th Cir. 2014); *In re Ruiz*, 455 B.R. 745 (10th Cir. BAP 2001); *In re Brubaker*, 426 B.R. 902 (Bankr. M.D. Fla. 2010); *Yoon v. Minter-Higgins*, 399 B.R. 34 (N.D. Ind. 2008); *In re Spencer*, 362 B.R. 489 (Bankr. D. Kan. 2006); *In re Todd*, 359 B.R. 863 (Bankr. N.D. Ohio 2007); *In re Sawyer*, 324 B.R. 115 (Bankr. D. Ariz. 2005); *In re Dybalski*, 316 B.R. 312 (Bankr.S.D. Ind.2004); *and see generally*, David R. Hague, *Turnover Actions and the "Floating Check" Controversy*, 2013 Utah Law Rev. 63 (2013).

Based on these decisions, Chapter 7 trustees examine bank account balances on the date of filing, and any reduction in that amount due to checks clearing postpetition is dealt with by: 1) debtors using exemptions to cover checks that clear postpetition; 2) a motion for turnover of the value of the fund in the account at the time of filing; or 3) an action against the recipient of the funds received via the postpetition check clearing process.

## III. *YOON V. MINTER-HIGGINS'* HOLDING THAT PRE-ARRANGED POSTPETITION DEBIT TRANSACTIONS DO NOT REDUCE THE BALANCE THE TRUSTEE CAN RECOVER.

In *Yoon v. Minter-Higgins*, the District Court reversed the Bankruptcy Court's decision denying the trustee's motion for turnover of the amount in the debtor's checking account at the time of the filing of the Chapter 7 petition. *Yoon v. Minter-Higgins*, 399 B.R. 34 (N.D. Ind. 2008).

In addition to prepetition checks that had cleared postpetition, the bank account had been depleted by "several pre-arranged automatic debits to creditors" which were not charged to the debtor's account until after the filing. *Yoon v. Minter-Higgins*, 399 B.R. at 37. The District Court treated the "pre-arranged debits" in the same manner as the prepetition checks, denying any reduction in the amount the debtor was required to turnover to the Chapter 7 trustee based upon the postpetition debits.

---

[4]/ While the case law discussions on this issue are wide-ranging and detailed, a key point is that the language of §542(a) permits a turnover action to proceed in the alternative: not only for "such property" but also for the "value of such property". *See*, *In re Fleming*, 424 B.R. 795, 802-804 (Bankr. W.D. Mich. 2010)(Congress intended to expand turnover rights in the new Code).

4

While it appears that the result, as stated,[5] in the District Court's *Yoon* decision is correct, there is a factual difference in the debit transfers in the present case that requires a different analysis, and potentially a different result.

IV. **PRE-ARRANGED DEBIT TRANSACTIONS ARE LEGALLY DIFFERENT FROM TRANSACTIONS INVOLVING THE USE OF A DEBIT CARD.**

The Electronic Fund Transfer Act[6] (hereinafter "EFTA") is the primary federal statute that governs debit card use:

> Enacted in 1978 as an amendment to the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.*, EFTA creates a "framework [of] rights, liabilities, and responsibilities of participants in electronic fund transfer systems," *id.* §1693(a). The statute covers a wide range of electronic money transfers - from ATM withdrawals and debit-card payments to banking by phone - and subjects them to a litany of procedural requirements designed to protect consumers from transactions made in error or without their consent. *See id.* §§1693a(6), 1693b-1693f.

*Wike v. Vertrue, Inc.*, 566 F.3d 590, 592 (6th Cir. 2009).

The provisions of the EFTA are implemented by "Regulation E"[7].

However, unlike the UCC provisions governing check transactions, the statute and regulations covering electronic fund transfers are not intended to be comprehensive, meaning that consumer debit cards are governed largely by the agreements between the consumer and the bank.[8]

> The federal Electronic Fund Transfers Act, 15 U.S.C.A. §§1693 *et seq.* which covers payroll cards as well as debit cards, does not regulate charge amounts and contains little regulation of agreements and practices, thus relying heavily on competition in the market and disclosure to control those matters. This certainly has allowed the law not to impede development and innovation, and it leaves details of the debit card arrangement largely to

---

[5]/ Drilling down a little deeper, the initial decision of the Bankruptcy Court reflects that there were two debit transactions that were not "preauthorized". One debit transaction for $30.14, dated 7/5/05, was on the date of filing, and it is unclear whether it was prepetition or postpetition. The other, where the debtor apparently used a debit card on Saturday, July 2, 2005, was for $4.77 at a grocery store. *See, In re Minter-Higgins*, 366 B.R. 880, 882 (Bankr. N.D. Ind. 2007). The District Court's decision does not mention these two smaller debit transactions that were not "pre-arranged".

[6]/ Electronic Fund Transfer Act, 15 U.S.C. §1693, *et seq*.

[7]/. "Regulation E is the common name for the implementing regulations for the Electronic Fund Transfer Act ('EFTA'), 15 U.S.C. §§1693 *et seq.*, which are set out at 12 C.F.R. §§ 205 *et seq.*" *Burgess v. Ally Bank*, 2015 WL 402663 at *1 n.3, 2015 U.S. Dist. LEXIS 9692 at *3 n.3 (M.D. Tenn. January 28, 2015); 12 C.F.R. 1005.3(a) (Regulation E encompasses "any electronic fund transfer that authorizes a financial institution to debit or credit a consumer's account.")

[8]/ There are typically five main parties to a debit transaction: "a consumer, merchant, bank, card network, and merchant acquirer". *See*, Note, *Safe to Swipe?: Why Congress Should Amend the EFTA to Increase Debit Card User Protection*, 93 Tex. L. Rev. 505, 508 (December, 2014), *citing*, Fumiko Hayashi, *The New Debit Card Regulations: Initial Effects on Networks and Banks*, FED. RES. BANK KANSAS CITY: ECON. REV., Fourth Quarter 2012 at 82. This decision only deals with a determination of the relative rights of two parties - the bank and the consumer (the debit card user).

agreements.

This means state law may regulate some aspects of agreements without much risk of preemption since the federal law has little to say. However, there seems to be little state law on these matters.

10A Hawkland UCC Series §6:5 (Jan. 2015).

Unlike a check transaction under the UCC, a consumer does not appear to have a general right to "stop payment" on a debit card transaction. Instead, the Electronic Fund Transfer Act only give consumers the ability to stop one kind of debit transaction: "preauthorized electronic fund transfers."[9] *See*, 15 U.S.C. §1693e(a)("A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer. The financial institution may require written confirmation to be provided to it within fourteen days of an oral notification if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent."); *Wike v. Vertrue, Inc.*, 566 F.3d 590, 592 (6th Cir. 2009)("[§1693e(a)] also gives consumers who discover preplanned transfers before they happen a mechanism for stopping them."). This statutory right to stop "preauthorized" payments is required to be spelled out in detail as part of the "terms and conditions" disclosure provided to the consumer. *See*, 15 U.S.C. §1693c(a)(5).

The description of the debit transactions in the District Court's decision in *Yoon* strongly suggests that they were "preauthorized electronic fund transfers" under the EFTA and Regulation E. The *Yoon* decision describes the transfers in issue as "pre-arranged debits". *Yoon v. Minter-Higgins*, 399 B.R. at 37. Thus, under the EFTA, the debtor in *Yoon* had a statutory right to stop these pre-arranged debit transfers at the time of filing - or at least any pre-arranged debit transfers that occurred more than three days after the filing of the Chapter 7 petition.[10]

The right to "stop payment" appears to be an important element in the cases where courts have held that a Chapter 7 trustee has a right to demand turnover of funds which were in the debtor's checking account at the time of filing, but were subsequently removed as prepetition checks were honored postpetition.

In the *Sawyer* case, the Chapter 7 trustee asked the court to look at the ability to "stop payment" as

---

[9]/ 15 U.S.C. Section 1693a(10) defines a "preauthorized electronic fund transfer" to mean: "an electronic funds transfer authorized in advance to recur at substantially regular intervals."

[10]/ The actual timing of the transfers made pursuant to the "pre-arranged" debits in issue are not discussed in either the bankruptcy court or the district court decisions. *See* Footnote 5 for a discussion of additional facts set forth in the bankruptcy court's decision.

6

being a crucial factor in establishing a right to turnover under Section 542(a): "The Trustee believes that because the Debtors could have placed 'stop payment' orders on all of the checks, they had the requisite possession or control for purposes of the turnover proceeding." *In re Sawyer*, 324 B.R. 115, 122 (Bankr. D. Ariz. 2005). The *Sawyer* court found the ability to stop payment to be important: "Such an analysis makes sense in that until the checks were honored by the debtor's bank, the debtor still had the opportunity to close the account or to stop payment on the checks." *Sawyer*, at 124.

Similarly, in *Brubaker*, the court stated: "The court's analysis makes sense in that until the checks were honored by the debtor's bank, the debtor still had the opportunity to close the account or to stop payment on the checks."[11] *In re Brubaker*, 426 B.R. 902, 907 (Bankr. M.D. Fla. 2010).

In Ohio, the right to stop a payment by check, or close the account, is found in U.C.C. §4-403(a), adopted through the enactment of O.R.C. §1304.32(A); *see also*, O.R.C. §1303.45 [U.C.C. §3-408] ("A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.").

In contrast, it appears that a consumer who engages in a typical debit card transaction by "swiping" their debit card to pay for a purchase, does not have a statutory right to stop the transaction. As previously discussed, debit card agreements, between the cardholder and the bank, generally control the relationship and the debit card transactions. *See, HSBC Bank v. Debit Card Overdraft Fee Litigation*, 14 F.Supp.3d 99, 107 (E.D.N.Y. 2014)("the Debit Card Agreement, which governs the use of the Plaintiffs' debit cards"); 10A Hawkland UCC Series §6:5 (Jan. 2015). If the account agreement does not provide the consumer with a right to stop a "pending transaction" in a case where the debit transaction was authorized, or if the terms and conditions prohibit an account holder from stopping a "pending transaction" (in the absence of fraud), then it appears that neither the Debtor, nor the Chapter 7 Trustee standing in the Debtor's shoes, would have had any ability to obtain a postpetition possessory right to an amount in excess of the Debtor's "Available Balance". *See, In re Shelbyville Road Shoppes, LLC*, 775 F.3d 789, 794 (6th Cir. 2015)("[t]he majority of lower courts that have considered whether a trustee can compel the turnover of funds where a debtor has *no present right* to the funds have prohibited the turnover because the trustee's claim to estate property is no greater than the debtor's claim at the time of filing." *Magill v. St. Emps.' Ret. Sys. of Ill. ( In re Lyons )*, 957 F.2d 444, 445 (7th Cir.1992)")(emphasis in original).

---

[11]/ The "analysis" both *Sawyer* and *Brubaker* are discussing is found in *In re Maurer*, 140 B.R. 744 (D. Minn. 1992). The *Maurer* decision was abrogated, at least in the Eighth Circuit, by *In re Pyatt*, 486 F.3d 423 (8th Cir. 2007)

7

## V. A MOTION FOR TURNOVER DOES NOT CHANGE THE UNDERLYING NATURE OF THE PROPERTY.

The structure of the Bankruptcy Code, and bankruptcy case law, both support the view that a Chapter 7 trustee cannot, through the use of Section 542(a), transform property that was essentially valueless at the time of filing, into a monetary obligation that a Chapter 7 debtor is required to either deliver to the trustee or account for its "value". *See*, *In re Shelbyville Road Shoppes, LLC*, 775 F.3d 789, 794 (6th Cir. 2015)("As the bankruptcy court noted in *Lauria v.Titan Sec. Ltd. (In re Lauria)*, 243 B.R. 705 (Bankr. N.D. Ill. 2000), 'if the debtor does not have the right to possess or use the property at the commencement of a case, a turnover action cannot be used to acquire such rights.' *Id*. at 709"); *U.S. v. Whiting Pools*, 462 U.S. 198, 205 n.8, 103 S.Ct. 2309, 2314 n.8, 76 L.Ed.2d 515 (1983).

Thus, as a starting point, for purposes of a motion for turnover the estate acquires the same legal and equitable interests that the debtor had at the time of filing.[12] As the Sixth Circuit Court of Appeals has stated: "Under 11 U.S.C. § 541, the trustee succeeds only to the title and rights in property that the debtor had and takes the property subject to the same restrictions that existed at the time the debtor filed the petition. *See Calvert v. Bongards Creameries ( In re Schauer)*, 835 F.2d 1222, 1225 (8th Cir.1987). Thus, a debtor's rights may not be expanded beyond what they were at the commencement of the case." *In re Graham Square, Inc.*, 126 F.2d 823, 831 (6th Cir. 1997).

Under Section 542(a), it is necessary (but not sufficient) that the trustee's claim be for turnover of property of the estate.[13] The provisions of Section 541 are broad, and even the holding in *Pyatt* suggests that the full Account Balance at the time of filing would be "property of the estate". *See*, *Brown v. Pyatt (In re Pyatt)*, 486 F.3d 423, 427 (4th Cir. 2007). Moreover, it appears that the full amount of the Account Balance, prior to the bank exercising whatever rights it has under the debit card agreement, is akin to the limited property interests encompassed in "bare legal title" or the possessory interest of a hold over tenant, which have been held to be property of the bankruptcy estate under Section 541. *See*, *In re Cannon*, 277 F.3d 838, 849 (6th Cir. 2002)(legal title is property of the estate under §541(a) & (d)); *In re Pfister*, 749 F.3d 294, 297 (4th Cir. 2014)("bare legal title" is property of the estate); *In re Convenient Food Mart No. 144, Inc.*, 968 F.2d 592, 594 (6th Cir. 1992)(tenancy at sufferance is property of the estate).

---

[12]/ Property of the estate can be augmented by §541(a)(2) - (7), and the trustee's avoiding powers. But here, the Trustee has not filed an adversary, nor cited any statutory authority other than Section 542(a).

[13]/ For records, being "property of the estate" is not a prerequisite for a trustee's demand for the turnover under §542(e). *See*, *In re McKenzie*, 716 F.3d 404, 419 (6th Cir. 2013)("an action for turnover under §542(e) does not require that the information be property of the estate").

However, for the Chapter 7 Trustee to prevail in a turnover action, the statute requires that the property be in the "possession, custody, or control" of the debtor, and that the property not be of "inconsequential value or benefit to the estates". *See*, §542(a). Under the stronger case law, in a "floating check" situation, the right of the debtor to actually obtain the monies in the checking account (through stopping payment or closing the account) is key to finding that the property was in the debtor's "possession, custody, and control" and was not of "inconsequential value of benefit to the estate". *See*, *In re Sawyer*, 324 B.R. 115, 124 (Bankr. D. Ariz. 2005); David R. Hague, *Turnover Actions and the "Floating Check" Controversy*, 2013 Utah Law Rev. 63, 84-88 (2013).

The Supreme Court has stated that money in a bank account: "consists of nothing more or less than a promise to pay, from the bank to the depositor". *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21, 116 S.Ct. 286, 290, 133 L.Ed.2d 258, 264 (1995). In the absence of other controlling law, and with the apparent blessing of the drafters of EFTA, it appears that a bank's "promise to pay" can be modified through the "terms and conditions" of a debit card agreement.

There are any number of labels that might be used to describe a bank's rights in situations where a debit card agreement authorizes a "hold" on funds in the customer's account - assignment, set off, recoupment, enforceable contract right, or some other right that "effectively constituted a lien".[14] This decision is not going to pick a label for the mechanism (if any) that may provide the bank with superior rights. Rather, the court will examine three cases in which trustees brought turnover actions involving different types of "accounts" (not subject to the UCC provisions governing checking accounts). These cases demonstrate that a trustee's turnover motion cannot succeed where the account holder has a superior interest that would prevent a debtor from acquiring possession or use the property.[15]

In *Cumberland Molded Products*, the Sixth Circuit Bankruptcy Appellate Panel considered the issue of the status of funds, subject to a perfected security interest, that had been held in debtor's checking account at the time of filing, but which were subsequently turned over to the Chapter 7 trustee by the debtor. *In re Cumberland Molded Products, LLC*, 431 B.R. 718 (6th Cir. BAP 2010). The bank had loaned money to the debtor on a secured basis, and the security agreement had included "proceeds" of the banks collateral. The parties agreed that the funds in the checking account were perfected as of the petition date. *Id*. at 722.

---

[14]/ *In re Belenkova*, 2014 WL 1203131 at *12, 2014 Bankr. LEXIS 1627 at *36 (Bankr. D. Mass. March 24, 2014).

[15]/ "It is axiomatic that a trustee's interests and rights in property are limited by and to the rights and interests of the debtor in that property." *In re Shelbyville Road Shoppes, LLC*, 775 F.3d 789, 794 (6th Cir. 2015), *quoting*, *Slone v. Vallo ( In re Starr )*, No. 09–37457, 2011 Bankr. LEXIS 947, at *11–12 (Bankr.S.D.Ohio 2011).

The *Cumberland* decision reversed the grant of summary judgment in favor of the Chapter 7 trustee, and granted judgment to the bank. Because the bank held the "superior interest"[16] at the time of filing, the Chapter 7 trustee could not retain the funds the debtor had caused to be transferred from the checking account at the trustee's request.

Similarly, in the *Belenkova* case, the court determined that the Chapter 7 trustee's right to turnover of certain shares of stock was subject to the debtor's margin loan balance. *In re Belenkova*, 2014 WL 1203131, 2014 Bankr. LEXIS 1627 (Bankr. D. Mass. March 24, 2014). The trustee was permitted to recover only the "net value" of the brokerage account, which "was the value of the stock minus the amount of the margin loan debt, which effectively constituted a lien in favor of the brokerage on the securities in the account." *Belenkova*, 2014 WL 1203131 at *12, 2014 Bankr. LEXIS 1627 at *35-36.

A Chapter 7 trustee's motion seeking turnover of a rent deposit from a landlord was analyzed in the same manner, finding that that the contractual rights of the landlord were superior to those of the debtor or the Chapter 7 trustee. As Judge Speer stated in *In re Coomer*, 375 B.R. 800, 806 - 807 (Bankr. N.D. Ohio 2007)[17]:

> Section 542(a) is best viewed as an enabling provision, allowing the trustee to obtain possession of property only where the debtor otherwise had a right to possess the property. But where a debtor, and thus the trustee, does not have a right to possess or use property at the commencement of the case, the right generally cannot be acquired through a turnover action under §542(a). *In re Sommer*, 28 B.R. 95, 96 (Bankr. D. Colo. 1983). That is, a bankruptcy trustee may not compel the turnover of property pursuant to §542(a) if the debtor had no right to obtain the property.
>
> . . . .
>
> Yet, functionally, the holding in *U.S. v. Whiting Pools* is simply an application of the already stated principle of §541(a) that the trustee steps into shoes of the debtor. In this way, the issue under §542 is not whether the debtor would have obtained possession of the property at the time of the filing of the bankruptcy petition, but rather whether the debtor could have legally obtained possession of the property when the case was filed. Under the holding in *U.S. v. Whiting Pools*, a trustee may obtain possession of property of the estate so long as the debtor could have obtained possession of the property; whether the debtor would have ultimately exercised that right is not relevant. On the other hand, where the

---

[16]/ *Id.* at 724.

[17]/ The *Coomer* decision is cited and quoted in *Shelbyville*, including: "'[F]undamental to the concept of 'Turnover' is that the asset to be turned over must be property of the debtor's bankruptcy estate.' *French v. Johnson ( In re Coomer )*, 375 B.R. 800, 803–04 (Bankr.N.D. Ohio 2007) (internal citation omitted). 'Section 542(a) is best viewed as an enabling provision, allowing the trustee to obtain possession of property *only* where the debtor otherwise had a right to possess the property." *Id.* at 806 (emphasis added).'" *In re Shelbyville Road Shoppes, LLC*, 775 F.3d 789, 793-794 (6th Cir. 2015).

debtor had no right to the property in the first place, and thus could not have obtained the property through legal process, §542(a) will not afford the trustee a substantive right to the property. *Daly v. Testo (In re Richardson)*, 267 B.R. 663, 667 (Bankr. D. Conn. 2001) (turnover provision requires a trustee to "step into the shoes" of his debtor, "*cum onere*").

The corollary to this holding is, if the debtor did not have the right to possess or use property at the commencement of the case - whether that right was used or not - the trustee cannot require the debtor to turnover the "value" of that property.

Accordingly, to the extent that the contractual "terms and conditions" in the debit card agreement give the bank a binding contractual right to retain the difference between the amount of the "Available Balance" and the "Account Balance", the debtor would have had no ability to gain access to those funds at the time of filing. And, as previously discussed, if the debtor could not have obtained possession of those funds, the Chapter 7 trustee could not require the debtor to turnover the value of those funds under §542(a).

## V. THE FAILURE OF PROOF OF THE CONTRACT TERMS.

Because of the small amount in controversy here, and because both parties desired a decision that would serves as guidance in future cases, this matter was submitted on agreed facts. The Chapter 7 Trustee did not object to the evidence of the bank policies regarding debit card transfers provided by Debtor's counsel, which appear to be primarily from internet sources. Those policies suggest that the account agreement between the bank and the debtor would not have allowed either the Debtor, or the Trustee, to have taken anything other than the amount of the "Available Funds" from the account (either by attempting to stop payment, or close the account).

However, it is the actual debit account agreement that would appear to be controlling, and that account agreement has not been provided to the court.[18]

Thus, there is insufficient evidence to determine the contract terms that would appear, based on the above discussion, to control the result the court should reach in this turnover action.

Accordingly, this matter will be set for further hearing on the submission of the "terms and conditions" for this account, or argument as to why the information submitted is the binding contractual language the court should rely upon in determining this issue.

**THEREFORE**, good cause appearing,

**IT IS ORDERED** that the Chapter 7 Trustee's Motion Objecting to Exemptions Pursuant to

---

[18]/ In addition to a general expectation that such an agreement should exist, the Electronic Fund Transfer Act states that the statutory right to stop "preauthorized" payments is required to be spelled out in detail as part of the "terms and conditions" disclosure provided to the consumer. *See*, 15 U.S.C. §1693c(a)(5). Accordingly, it appears that banks are legally required to provide a "terms and conditions" document to a consumer with an account tied to a debit card.

11

Bankruptcy Rule 4003(b) [Doc. # 11] is set for further hearing on Wednesday, April 29, 2015 at 1:30 p.m.

###

12

14-33734-jpg    Doc 25    FILED 04/03/15    ENTERED 04/03/15 15:07:47    Page 12 of 12